## JAMES McMAHAN v. THE STATE.

### No. 3348. Decided June 25, 1906.

**1.—Theft From Person—Unwilling Witness—Refreshing Memory.**

Where upon trial for theft from the person, the State's witness from whom it was alleged the money was taken, was an unwilling witness and wavered in his statement as to whether he gave the defendant his consent to take the money out of his pocket, there was no error, for the purpose of refreshing his mind, to call his attention to a prior statement he made to another party; especially where no prejudice could result therefrom to the defendant.

**2.—Same—Verdict—Error of Form—Correction.**

Where upon trial of theft from the person the verdict of the jury omitted the word confinement, which the court permitted to be inserted, there was no error.

**3.—Same—Instructed Verdict.**

See opinion for evidence which did not require a charge of the court instructing the jury to return a verdict of not guilty on defendant's motion.

**4.—Charge of Court—Want of Consent—Implied Consent.**

Where upon trial of theft from the person, the evidence showed that prosecutor was drinking and had gone to sleep in a saloon; and while in that condition defendant put his hand in his pocket and pulled out a five-dollar bill, remarking that it was easy money; and the evidence further showed that the parties were good friends and that prosecutor had told defendant before getting drunk to look after him, etc.; a charge of the court that if the parties had an understanding and agreement that defendant should take prosecutor's money when he became drunk to acquit him was error, and he should have submitted the requested charge that if defendant believed prosecutor intended for him to take his money from him they should acquit him.

**5.—Same—Charge Refused—Offense Defined.**

Upon trial of theft from the person the court should have submitted the requested charge on implied consent, which was the theory of the defense; and this although defendant may have subsequent to the taking of the money, formed the design to appropriate a part of it.

Appeal from the District Court of Tarrant. Tried below before the Hon. Irby Dunklin.

Appeal from a conviction of theft from the person; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Buck, Cummings & Doyle,* for appellant.—On question of impeaching own witness: Erwin v. State, 32 Texas Crim. Rep., 519; Dunagain v. State, 38 id., 614. On question of peremptory instruction: Good v. State, 30 Texas Crim. App., 276. On question of implied consent: Garza v. State, 38 Texas Crim. Rep., 317; Horn v. State, 30 Texas Crim. App., 541.

*J. E. Yantis,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of theft from the person, and his punishment assessed at two years confinement in the penitentiary, and prosecutes this appeal.

During the trial the State put the witness John E. Martel on the stand. It seems that after examining the witness some time, he stated that he did not swear before the grand jury that he told this fellow (defendant) to take care of any money. State's attorney then asked said witness, "When did you conceive the idea of swearing that in this case? That was after you had gone to see Mr. McMahan, didn't you tell Mr. Roy, down in the justice's court room, this money was taken out of your pocket without your consent. Didn't you tell him that?" To which question and answer thereto, defendant then and there objected on the ground that it was an effort on the part of the State to impeach its own witness. To which the court remarked, "If it is a matter of surprise to the county attorney." Defendant's counsel stated, that was not claimed. Thereupon the county attorney replied,

"We will put Mr. Roy on the stand to prove this man told him the money was taken without his consent." To which question, answer and statement, defendant's counsel then and there renewed his objection upon the ground that it was an effort of the State to impeach its own witness; that the remark of the court was uncalled for, and the statement of the county attorney was an effort to get before the jury evidence of hearsay declarations. This was overruled. Said witness was permitted to state, as follows: "I reckon you know if anybody takes money out of your pocket when you are asleep. I don't know whether Mr. Roy asked me the question as to whether the money was taken out of my pocket without my consent or not. I told Mr. Roy I didn't know when the money was taken. I did not know who got the money and would not have known if they had not told me. I did not tell anybody to put their hand in my pocket and get out the money." The court explains this by stating that it appeared to the court that this witness was an unwilling witness for the State, and was anxious to shield defendant if possible. It appears that the witness was permitted to state that Roy asked him on a former occasion the question, as to whether the money was taken out of his pocket without his consent or not. "I told Mr. Roy I did not know when the money was taken. I do not know who got the money, and would not have known if they had not told me. I did not tell anybody to put their hand in my pocket and get out the money." Under the circumstances, as explained by the court, we are inclined to believe that it was competent for counsel for the State to call the witness' attention to facts stated by him in order to refresh his memory. It seems from his answer here that the same was without prejudice to appellant.

We do not believe there was any error in the action of the court with reference to the verdict of the jury and the correction thereof. The jury returned the verdict, as follows: "We the jury find the defendant guilty as charged in the indictment, and assess his punishment at two years in the penitentiary." And signed by the foreman. The word "confinement" was afterwards inserted, and the verdict so reformed was signed. This was simply a formal change or reformation. The verdict was sufficient without this.

We do not believe that the court was required to instruct the jury to return a verdict of not guilty on appellant's motion.

Appellant insists that the court erred in the following portion of the charge: "Even though you should believe from the evidence that the money alleged in the indictment was taken from the person and possession of Johnnie Martel, and without his knowledge, but further believe from the evidence that prior to such taking, it had been understood and agreed by and between the defendant and said Martel, that should said Martel become so drunk that he could not take care of himself, then the defendant should take from him, the said Martel, such money as he, Martel, might have on his person, and that in compliance with said understanding, defendant took said money from the person and

possession of said Martel, for the purpose of keeping the same for said Martel, and without any intention to steal the same, at the time he took it, if he did take it, then you will acquit the defendant; and you will acquit the defendant if you do not believe from the evidence beyond a reasonable doubt that the defendant took said money without the consent of said Martel, or if you do not believe from the evidence beyond a reasonable doubt that in taking said money, if he did take it, he intended at the time of taking, to steal it." It is claimed that this charge shifts the burden of proof to the defendant, and requires defendant to make proof of such facts as would authorize an acquittal on this line. Appellant further contends that said charge was not in accordance with the evidence, and the court should have charged the jury, "if they believed from the evidence, previous to the taking of said money by defendant, prosecutor, Martel, told defendant to take care of him in case he got too drunk to take care of himself, and that defendant from said statement so made to him by prosecuting witness, believed he intended for him to take his money from him, or in case they had a reasonable doubt as to whether this was true, in either event they should acquit defendant." In view of the fact that the evidence on the question of consent or not, on the part of the prosecutor as to the taking is weak, we believe that the charge of the court was too restrictive, and was not exactly applicable to the evidence; and the charge suggested by appellant should have been given, as it met his phase of the case. It may be that prosecutor was a reluctant witness and desired to shield appellant, still this did not relieve the State from proving beyond a reasonable doubt, that prosecutor did not consent to the taking. Here is some of the testimony on that subject: Prosecutor was drunk or drinking, and had gone to sleep in the saloon. While in that condition, appellant, who was a waiter and handing beer around the theater, went up to prosecutor, put his hand in his pocket, pulled out what was taken by the witness to be a $5 bill, and remarked at the time, "This is easy money." It appears that prosecutor and appellant had previously known each other, and were good friends; that prosecutor told appellant before he got drunk that night, to look after him, and see that he did not lose anything; that he meant for him to look after him just like one friend would look after another; that nothing was said about any money, but that he meant for him to take his money or other valuables if he got so drunk as not to be able to take care of himself. In reply to the State's questions, prosecutor stated that nothing was said about appellant putting his hand in his pocket and taking his money; that he never told anybody to put his hands in his pocket and take out $5; that he did not give appellant his consent for him to put his hand in his pocket and take out $5. It was also shown in this connection, that appellant that night, delivered a $5 bill to a saloon man, by the name of Whitney McNish, and got $1.50 in change, and told McNish to keep the balance of it for some one, but witness did not remember the name. Appel-

lant says that he told him to keep it for the prosecutor, Martel. This is about the state of case on the question of consent. As stated, it is evident from a review of this record, that the witness Martel desired, as far as he could, to shield appellant in giving in his testimony. We believe, under the peculiar facts of this case, the court should not .have given the charge on the subject of consent as indicated in that copied above. There was really in the evidence *no understanding or agreement* by and between defendant and Martel, that if he became too drunk to take care of himself, that the defendant should take from said Martel such money as he might have on. his person at the time, and yet the charge of the court put the question to the jury in that form. If appellant had authority from Martel to take his property, it was by an implied consent; that is, he was requested generally to take care of him, and as stated by Martel himself, this included, to look after his valuables if he got too drunk to take care of them himself. He gave him no direct instructions or request as to taking the money out of his pocket. The charge requested, which the court refused to give, was in direct response to the evidence, and put this question of implied consent directly before the jury, and we think it should have been given. We do not believe that the subsequent portion of the charge of the court, to the effect, if they did not believe from the evidence beyond a reasonable doubt that the defendant took said money without the consent of the said Martel, they should acquit him, cured the defect.

We also believe that the second requested instruction asked by appellant should have been given. It had relation to testimony adduced before the jury. Appellant claimed that he had consent to the taking; at least prosecutor's implied consent. He may have taken the money at the time in good faith and subsequently formed the design to appropriate a part of it. There is evidence showing that while he deposited $3.50 for prosecutor, he appropriated $1.50 of it to his own use. If he formed the intent to appropriate this money at this time, this would not constitute theft. It may be that the court regarded the testimony as weak, on this line, and we are inclined to agree with the court; still the testimony was in the case, and the jury should have been permitted to pass on that fact.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, absent.